LABORDE, Judge.
Expropriation proceedings under LSA-R. S. 48:441-460 were commenced against Orleans Oil Company (Orleans) by the State of Louisiana, through the Department of Transportation and Development (DOTD). The lessees of Orleans’ property, Wilford Lee Fontenot, Judy Ann Fontenot and Roosevelt John Fontenot, d/b/a Fontenot’s Four Corners Phillips 66, intervened in the expropriation suit. Intervenors demanded compensation for the loss of their leasehold interest. Orleans and DOTD jointly filed an exception of no right of action against intervenors. The trial court, after reviewing the lease and a letter noticing the termination of the lease, sustained the exception. Intervenors appeal this ruling and assign three errors to the trial court.[1] We find no merit to intervenors assignments; accordingly, we affirm the judgment of the trial court.
Intervenors correctly point out that Louisiana law recognizes the rights of the lessee in expropriation cases. See La. Const., 1974, Art. 1, § 4; State, Department of Transportation & Development v. Jacob, 483 So.2d 592 (La.), on remand, 491 So.2d 138 (La.App. 3d Cir.), writ denied, 496 So.2d 331 (La.1986); Hodges v. LaSalle Parish Police Jury, 368 So.2d 1117 (La.App. 3d Cir.1979). This is true whether the lease is recorded or nonrecord-ed. Jacob, 483 So.2d at 595. In State, Department of Transportation & Development v. Exxon Corporation, 430 So.2d 1191, 1195 (La.App. 1st Cir.1983), the lessee’s rights were protected even under a verbal extension of a terminated written lease. In this instance, however, inter-venors are protected by no lease whatsoever for, as will be shown, the lease terminated upon DOTD initiating the expropriation proceeding. The parties mutually agreed to a valid resolutory condition. See La.C.C. arts. 1767, 1773, and 2684.
Orleans and intervenors entered into a written lease dated March 24, 1979. This lease was recorded. The lease clearly provides for an initial term of six (6) months; thereafter, either party had the *1165 right to terminate the lease upon ten (10) days notice:
“2. TO HAVE AND TO HOLD the leased premises and all rights, privileges, and appurtenances thereunto belonging, unto Lessee for a period of SIX months beginning the 24th day of March, 1979, and continuing thereafter until terminated by either parly upon notice in writing given at least ten (10) days prior to effective date of termination.”
Notice of termination was issued by Orleans on June 14,1984. The certified letter set the lease termination date for the day the State “goes forward with the expropriation.”
In part, the letter reads:
"Dear Dealer:
As Orleans has indicated in its letters and conversations with you and your attorney Bill Logan, Orleans intends to respect and recognize your right to peaceful possession of the above addressed premises under the conditions described in the Lease until the State of Louisiana goes forward with the expropriation. Our communication with the highway department indicated that it is now virtually certain that the State will go forward with the expropriation and that Orleans, and therefore you, will lose possession of the property as per the taking.
Accordingly, this letter is sent to give you such notice of that upcoming loss of possession and the end of our relationship as the law requires.
[[Image here]]
Accordingly, you are hereby notified that, because of, and effective upon the date of any such taking, under eminent domain, all agreements, leases, contracts, franchises or franchise relationships Orleans has with you shall terminate. On such date, you must surrender the premises in the condition required by the lease and settle your accounts with Orleans.”
DOTD filed its petition for expropriation on June 28, 1984. DOTD deposited its estimate of compensation into the registry of the court on July 3, 1984. On that same day, the trial court signed the order of expropriation. Under LSA-R.S. 48:445, title to the property vested in the State upon the deposit.
Intervenors contend that because they were not paid compensation for their lease interest, full ownership in the expropriated property could not have vested in the State. We do not agree. Viewing the lease and the notice of termination together, Orleans clearly communicated its intent to have the lease terminated upon State action. DOTD, acting for the State, brought the expropriation action on June 28,1984. The lease terminated at that time as the State went “forward with the expropriation.” The resolutory condition occurred and the lease obligation came to an end. That the taking was not complete until July 3, 1984 is of no moment.[2]
Intervenors have no right of action in the expropriation suit as they have no legal interest in the subject matter of the suit. See Favrot v. Favrot, 448 So.2d 187 (La.App. 1st Cir.1984). The trial court correctly dismissed intervenors from suit.
For the above and foregoing reasons, the judgment of the trial court sustaining ap- *1166 pellees’ exception of no right of action is affirmed at intervenors’ costs.
AFFIRMED.

.Intervenors assign the following as errors:
"1. The Trial Court erred as a matter of law in denying the appellant’s demand for compensation by property taken by the State of Louisiana, through the Department of Transportation and Development, since just and adequate compensation was not paid for the property pursuant to Art. 1, Sec. 4, La. Const. (1974).
2. The Trial Court erred as a matter of law in sustaining the Exception of No Right of Action since the State of Louisiana cannot obtain full ownership of private property without compensating the owners of a recorded leasehold interest in the property.
3. The Trial Court erred as a matter of law in ruling that the lease agreement between the appellants and Orleans was terminated by the expropriation.”

. The lease also provides:
"It is understood and agreed that if Lessor holds the property herein demised other than in fee and if Lessor’s estate in said property shall for any reason terminate (whether due to the acts of Lessor or otherwise) during the term of this lease, then this lease shall automatically terminate anything herein to the contrary notwithstanding."
This provision is consistent with La.C.C. art. 2697:
"If, during the lease, the thing be totally destroyed by an unforseen [unforeseen] event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of that lease. In neither case has he any claim of damages.”
Therefore, even if Orleans had not notified In-tervenors of the termination of the lease upon the State going "forward with the expropriation" (June 28, 1984), the lease would have terminated under the afore quoted "self-destruct” clause on July 3,1984 at the moment the State deposited the estimate in the registry of the court. See LSA-R.S. 48:445. Without a lease, Intervenors lack a legal interest in the suit.